UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SUSAN C. ATWELL ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-cv-1808 |
| v. ) | |
| ) | Judge Sharp |
| TENNESSEE STATE EMPLOYEES ) | |
| ASSOCIATION ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant Tennessee State Employees Association's ("TSEA") pre-discovery Motion for Summary Judgment. (Docket No. 14). For the reasons set forth below, the Motion is denied.

### I. FACTUAL & PROCEDURAL BACKGROUND

Unless stated otherwise, the following facts are drawn from Plaintiff Atwell's Complaint. (Docket No. 1). Plaintiff Susan C. Atwell served as Membership Director for Defendant TSEA from December 2008 until September 2013. (Docket No. 1 at ¶¶ 8-9). Ms. Atwell alleges that another TSEA employee, Anthony Trice, subjected her to unwanted sexual advances beginning in July 2013. (Docket No. 1 at ¶ 12). For approximately one month, Plaintiff attempted to "quell the advances on her own," id. at ¶ 13, but Mr. Trice's behavior "became more aggressive" in August 2013, id. at ¶ 14. In addition to unwanted sexual advances, Mr. Trice allegedly told Ms. Atwell that he knew where she lived and would follow her to and from the TSEA building. (Id. at ¶¶ 15, 16). Plaintiff alleges that she attempted to report this conduct to her supervisor,

Robert O'Connell ("Supervisor O'Connell") but was unable to secure a meeting with him. (Id. at ¶¶ 18-20).

Mr. Trice's harassment of Ms. Atwell reached its zenith on September 5, 2013 when Mr. Trice "walked into the company kitchen and physically touched Plaintiff in an unwelcomed manner and told her she looked 'like a real baby doll.'" (Id. at ¶ 21). Plaintiff then phoned Supervisor O'Connell for help and although he said the two would "get together to talk," he soon left the premises and Plaintiff did not hear from him again that day. (Id. at ¶ 23).

The Parties agree that Plaintiff met with Supervisor O'Connell the very next day, on September 6, 2013, at which time he gave Ms. Atwell the choice of being terminated or resigning in lieu of termination. (Docket No.1 at ¶¶ 24-25; Docket No. 17 at ¶ 3). In subsequent filings, Plaintiff confirmed that she "chose to resign in lieu of termination" and executed an agreement entitled "Resignation and Agreement." (Docket No. 18-1 at ¶ 4). The Resignation and Agreement states in full:

> I, Susan Atwell Wells, hereby tender my resignation from employment with the Tennessee State Employees Association (TSEA), effective December 1, 2013. Between today, September 6, 2013 and December 1, 2013, I will be on annual leave, and when my annual leave balance is exhausted, I will be on administrative leave with pay. I understand that this resignation and the terms detailed above are in lieu of termination and I agree that I will not initiate or otherwise participate in any legal action whatsoever against TSEA arising out of or concerning in any way, my employment with TSEA, or my termination there from [sic].
>
> I have read and understand this document and enter into the agreement contained herein freely and without coercion of any kind.

(Id.). Plaintiff also concedes that she continued to receive her regular salary through December 1, 2013 and that she received some other benefits after resignation, although the exact nature and amount of those benefits remain in dispute. (Id. at ¶¶ 8, 9). Defendant has set forth the amounts paid to Plaintiff to secure her release of claims as follows:

2

> Putting aside Ms. Atwell's 23 annual leave days, for which she was paid, TSEA provided her with $16,665.88 in additional salary and benefits pursuant to the Resignation and Agreement. Declaration of John Summers ¶ 6. This included $11,697.70 in additional salary, $2,064.57 in contributions to the Tennessee Consolidated Retirement System, $2,218.40 in health insurance premiums, a $500 longevity benefit, $125 in 401(k) matching contributions, and $60.21 in dental insurance premiums. Id.

(Docket No. 15 at 3 n.1).

Ms. Atwell timely filed a charge of discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter on August 7, 2014. (Docket No. 1 at ¶ 28). She filed the instant action on September 5, 2014, bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5 ("Title VII"), and the Tennessee Human Rights Act, T.C.A. 4-21-101 *et seq.*[1] Defendant filed its Answer and counterclaim for breach of contract on October 13, 2014.

## II. LEGAL ANALYSIS

To obtain summary judgment, a party must establish that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty. Sch. Sys., 205 F.3d 912, 914 (6th Cir. 2000). Here, Defendant moves for summary judgment not based on the merits of Plaintiff's claims but based on the "tender back rule." The Parties agree that Plaintiff executed the Resignation and Agreement and received continued compensation from TSEA even after her resignation. Thus, the sole question before the Court is whether the tender back rule applies to this case and bars Plaintiff's claims from proceeding.[2]

---

[1] Ms. Atwell also states a cause of action under the Civil Rights Act of 1991, 42 U.S. Code § 1981a. Although that section covers remedies applicable to Ms. Atwell's Title VII claim, it does not provide a separate cause of action.

[2] Plaintiff argues that the continued compensation she received through December 1, 2013 did not constitute compensation because she would have been entitled to that pay had she not been retaliated against. (Docket No. 18-

The tender back rule is a principle of contract law. According to the rule, if a party signs a contract releasing claims in exchange for consideration, the tender back of that consideration is an absolute prerequisite to avoidance of the release. See 17A Am. Jur. 2d Contracts § 574 ("[T]he general rule is that a party who wishes to rescind a contract must return the opposite party to the status quo."). The Sixth Circuit addressed the tender back doctrine in 1996 in Samms v. Quanex Corp., 99 F.3d 1139 (6th Cir. 1996). In Samms, the Sixth Circuit endorsed the tender back rule and applied it to bar a claim under the Employee Retirement Income Security Act where the plaintiff had not tendered back money received in exchange for signing a release before filing suit. Defendant relies on Samms to ask the Court to enter summary judgement against Plaintiff.

However, the Court does not find the law to be so clear-cut. Although the Sixth Circuit endorsed the tender back doctrine in Samms, the legal landscape has changed since that decision. Most notably, the Supreme Court has now twice disavowed tender back in the context of remedial employment statutes. The first time predates Samms, when the Court declined to require a plaintiff with a claim under the Federal Employers Liability Act to tender back severance money received before pursuing his case. Hogue v. S. R. Co., 390 U.S. 516, 518 (1968) ("It is sufficient for the purposes of this decision to note that a rule which required a refund as a prerequisite to institution of suit would be wholly incongruous with the general policy of the Act to give railroad employees a right to recover just compensation for injuries negligently inflicted by their employers." (citation and internal quotation marks omitted)). More recently, the Supreme Court chose not to apply the tender back rule to a claim under the Age Discrimination in Employment Act, a decision motivated in part by the remedial goals of the

---

1 at ¶ 5). This argument is unavailing; it is contrary to the plain language of the release she signed, which expressly states: "I understand that this resignation and the terms detailed above are in lieu of termination."

statute. Oubre v. Entergy Operations, Inc, 522 U.S. 422 (1998). The Supreme Court has not yet addressed whether the tender back rule applies to claims under Title VII. Oubre and Hogue indicate, however, that the tender back rule is not inflexible, especially when considered in the context of remedial statutes.

Since Oubre some courts have pointed to the remedial purpose of the statute to reject the tender back doctrine in the context of Title VII cases. For example, a district court in New Mexico explicitly extended Oubre to a Title VII case:

> An inflexible application of the tender back rule would, as a practical matter, prevent courts from determining the conditions under which a release has been obtained. Plaintiffs with meritorious suits effectively would be precluded from bringing their claims. As emphasized in Hogue, supra, this would be contrary to Congress' purposes in passing statutes such as the FELA, ADEA, or Title VII.

Rangel v. El Paso Natural Gas Co., 996 F. Supp. 1093, 1097 (D.N.M. 1998) (collecting cases). Similarly, in this circuit, an Eastern District of Michigan judge noted that even if tender back was eventually required, it did not bar the litigation entirely. See Gascho v. Scheurer Hosp., 589 F. Supp. 2d 884, 891 (E.D. Mich. 2008) ("Even assuming that federal law requires that Plaintiff tender back the consideration that she received under the release, federal law does not require that the tender back be before, or contemporaneous with, the filing of the original complaint."). In Gascho, the court allowed the plaintiff to amend her complaint to show compliance with the tender back doctrine.

On the opposite side of the ledger, other district courts in this circuit apply Samms to require tender back in Title VII cases, rather than extending Hogue and Oubre. See, e.g., Larkins v. Reg'l Elite Airline Servs., LLC, No. 1:12-cv-139, 2013 WL 1818528, at *6 (S.D. Ohio Apr. 29, 2013); Williams v. Detroit Pub. Sch., No. 10-10856, 2011 WL 6945729, at *7 (E.D. Mich. Dec. 6, 2011) ("[I]t is Plaintiff, not Defendants, who seek release from a contractual term, and

5

thus it would seem incumbent on Plaintiff to return consideration prior to seeking reinstatement of her claims."). As far as circuit courts go, only the Eighth Circuit has a post-Oubre case that explicitly discusses application of the tender back rule to Title VII claims. See Richardson v. Sugg, 448 F.3d 1046, 1057 (8th Cir. 2006) (applying Oubre's policy considerations to a prospective Title VII waiver and finding "that the doctrines of tender-back and ratification do not bar [Plaintiff's] suit.").

The law is no clearer when it comes to Plaintiff's state law claim. Defendant points to a Sixth Circuit case that notes that Tennessee applies the tender back rule. See Mackey v. Judy's Foods, Inc., 867 F.2d 325, 329-30 (6th Cir. 1989) (citing Cordell v. Sky Rides of America, Inc., 404 S.W.2d 488, 489 (Tenn.1966)). But Cordell, the Tennessee case that the Sixth Circuit relied upon in Mackey, has since been overruled. See Betts v. Tom Wade Gin, 810 S.W.2d 140, 142 (Tenn. 1991) ("We believe, however, that deference to the will and pronouncements of the legislature mandates not unjustified homage to principles of contract law but, rather, abandonment of the tender requirement in workers' compensation cases."). Additionally, this Court is unable to find any case addressing the tender back rule in the context of the Tennessee Human Rights Act.

In light of the lack of clarity on the applicability of the tender back rule to employment discrimination claims, this Court finds the approach of the Gascho court most appropriate here and declines to block Plaintiff's claims at the starting gate. However, the Court is also mindful of the fact that Defendant has already paid for these claims once and should not have to do so again now by funding litigation against itself. The Court therefore finds that an appropriate middle ground is to require Plaintiff tender back the consideration she received from Defendant and amender her Complaint to reflect compliance with this directive before the litigation

continues. If Plaintiff fails to tender back the consideration, Defendant may renew its request for summary judgment.

### III. CONCLUSION

In accordance with the foregoing, the Court rules as follows:

(1) Defendant's Motion for Summary Judgement, Docket No. 14, is hereby DENIED; and

(2) Plaintiff is directed to TENDER BACK to Defendant $16,665.88 and to AMEND her Complaint to reflect such payment. If Plaintiff is unwilling or unable to pay the above sum, she may seek voluntary dismissal of her claims.

It is SO ORDERED.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE